UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| SCOTTY G. GOODELL, | ) |
| On Behalf of Himself and | ) |
| All Others Similarly Situated, | ) Case No. 12-1112 |
| Plaintiff, | ) |
| | ) Judge Michael M. Mihm |
| v. | ) |
| FARMLAND FOODS, INC. | ) |
| Defendant. | ) |

## MOTION FOR PRELIMINARY APPROVAL FOR ATTORNEY'S FEES AND COSTS AND ENHANCEMENT PAYMENT

**COMES NOW** the Plaintiff, by and through his counsel of record, and hereby moves this Court to approve the attorneys' fees, costs and enhancement award to the Plaintiff as provided in the Settlement Agreement and the Joint Motion to Preliminary Approval of Settlement regarding his collective action under the Fair Labor Standards Act (FLSA) and his class action under the Illinois Minimum Wage Law (IMWL), in the above captioned matter.

### INTRODUCTION

During mediation on July 16, 2013, the Parties negotiated the requested attorneys' fees, costs, and an enhancement award for the Named Plaintiff, Scotty Goodell, as part of the settlement of this FLSA collective action and IMWL class action.  The Plaintiff, on behalf of himself and other similarly situated current and former employees of Defendant, is seeking, and the Defendant does not oppose, Court approval of $107,445.88 as attorneys' fees and costs

incurred in prosecuting this matter and administering the settlement fund, as well as a $2,750.00 enhancement award for the Named Plaintiff, Scotty Goodell.

## ANALYSIS

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).

The requested fees were negotiated between the Parties at a formal mediation session during which the Parties discussed the factual complexity of the case and reached a settlement. Plaintiff is seeking Court approval of fees and costs in the total amount of $107,445.88.  Of that total amount, $4,945.88 is for costs and expenses incurred in prosecuting this action. Attached hereto, as Exhibit 1, is a summary of Plaintiff's expenses in this case.  After deducting such costs, the requested attorneys' fees amount to $102,500.00.

In light of the results achieved for their clients, Plaintiff's Counsel should be awarded the requested fees and costs. As the Supreme Court has explained, "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### A.  Costs

In addition to the substantial time devoted to this case, Plaintiff's Counsel also incurred actual out-of-pocket expenses.  District courts in the Seventh Circuit award costs separately from attorneys' fees in class action settlements.  *E.g. Kendrick v. Atcor, Inc.*, 1988 WL 84124 at *2 (N.D. Ill. July 29, 1988); *see also Summers v. UAL Corp. ESOP Committee*, 2005 WL 3159450 (N. D. Ill. Nov. 22, 2005) (approving $850,000 in costs, even though such costs equaled the amount of requested attorneys' fees awarded).  Here, Plaintiff's Counsel incurred expenses amounting to $4982.28, most significantly from travel expenses and deposition transcripts, as

detailed in Exhibit 1. Plaintiff's counsel is seeking court approval of costs amounting to $4945.88.

### B. Attorneys Fees

The Seventh Circuit has explained that attorneys' fees in a class action settlement may be calculated by using either the "lodestar" approach or as a percentage of the settlement fund. *Summers v. UAL Corp. ESOP Comm.*, 2005 WL 3159450 (N.D. Ill. Nov. 22, 2005) (citing *Cook v. Niedert,* 142 F.3d 1004, 1012-13 (7th Cir.1998)). Under the lodestar approach, "reasonable hourly rates are multiplied by the hours reasonably expended by the attorneys, which is then multiplied by a risk multiplier that is to be determined at the district court's discretion." *Id.* Under the "percentage of settlement fund" approach, the amount of attorneys' fees is simply a percentage of the settlement proceeds. *Id.* While either approach is appropriate, the Court can also compare the outcomes under both approaches as a cross-check, "in order to make sure that [the court is] "award[ing] counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Summer,* 2005 W.L. 3159450 at * 1 (citing *In re Synthroid Marketing Litigation,* 264 F.3d 712, 718 (7th Cir.2001)).

Here, the Parties' Settlement Agreement provides for Plaintiff's attorneys' fees to be paid as a percentage of the settlement fund; specifically, it provides for attorneys' fees at 25% of the settlement fund. The attorneys' fees requested in this case amount to $102,500, or 25% of the settlement fund. The 25% fee award as provided in the Settlement Agreement is eminently reasonable. *See Silverman v. Motorola Solutions, Inc.,* --- Fed. Appx. ---, 2013 W.L. 4082893 (7th Cir. 2013) (affirming award of 27.5% of $200 million settlement fund in contingency fee case); *In re Synthroid Marketing Litigation,* 325 F.3d 974, 980 (7th Cir. 2003) (setting percentage of fund at 30% of the first $10 million). The Seventh Circuit and Courts within the Seventh

Circuit have regularly found that in class action common fund cases, an award of even more than the 25% requested here is within the reasonable range. *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 598-599 (N.D. Ill. 2011) (citing *Taubenfeld v. AON Corp.*, 415 F.3d 597, 598-600 (7th Cir. 2005) (finding that the district court was within its discretion in awarding lead counsel 30% of a $7.25 million settlement fund); (citing *In re Synthroid Mktf. Litig. (Synthroid II)*, 325 F.3d 974, 980 (7th Cir. 2003) ("We * * * give consumer class counsel 30% of the first $10 million and 25% of the next $10 million * * * from $20 million to $46 million, consumer class counsel is entitled to 22% of that portion of recovery…" ).

Moreover, when calculated on a lodestar basis, the fees incurred are in line with the percentage of fund amount. As detailed herein, calculated on a lodestar basis, the attorneys' fees incurred by Plaintiff in this case amount to $92,540.00 as of August 21, 2013. Attached hereto as Exhibit 2 are the detailed time entries of Plaintiff's attorneys, Mark Kistler and Sara Gold showing their work performed in this case (234.90 hours by Mr. Kistler and 23.75 hours by Ms. Gold)[1]. Attached hereto as Exhibit 3 is a summary of such hours of work by Plaintiff's attorneys in this case, showing a total of 258.65 hours. Attached hereto as Exhibit 4 are the detailed time entries of Plaintiff's paralegals, Kathy Corcoran, Danielle Shirley, and Layne Aingell, showing their work performed in this case (43.02 hours by Ms. Corcoran, 37.30 hours by Ms. Shirley, and 22.28 hours by Ms. Aingell). Attached hereto as Exhibit 5 is a summary of such hours of work by Plaintiff's paralegals in this case, showing a total of 102.60 hours. In sum, Brady & Associates, through its attorneys and paralegals, devoted the following amounts of time through August 21, 2013, at the following hourly rates[1], to this case:

---

[1] The reasonableness of the hourly rates of the attorneys and paralegals is addressed below.

| Attorneys | Hours | Rates | Fee |
|---|---|---|---|
| Mark A. Kistler | 234.90 | $325.00 | $76,342.50 |
| Sara Gold | 23.75 | $250.00 | $5,937.50 |
| | | | |
| **Paralegals** | **Hours** | **Rate** | **Fee** |
| Kathy Corcoran | 43.02 | $100.00 | $4,302.00 |
| Layne Aingell | 22.28 | $100.00 | $2,228.00 |
| Danielle Shirley | 37.30 | $100.00 | $3,730.00 |
| | | | |
| | | **Total** | **$92,540.00** |

The various hourly rates requested by Plaintiff's Counsel are reasonable and acceptable hourly rates in the relevant market. The specific hourly rates of Mark Kistler ($325) and Sara Gold ($250) used to calculate the lodestar in this case, are reasonable. Attached hereto, as Exhibit 6, is an affidavit of Teresa Woody, an exceptionally respected attorney, who has practiced in the Kansas City area since 1986. Ms. Woody has extensive experience representing businesses and individuals in complex litigation, including litigating numerous FLSA cases. (Exhibit 6, Paragraphs 2 and 3). Ms. Woody opines that the above rates for Mr. Kistler are reasonable, and are "in fact lower than the hourly rates billed to defendant corporate employers by many Kansas City defense attorneys with comparable employment and trial experience." (Exhibit 6, Paragraphs 5, 6 and 7). Moreover, Plaintiff's Counsel assumed the risk of taking this case on a contingency fee basis, with the additional risks associated with the "compensable time" issues, as explained above. Such risks warrant a premium in the relevant market, when compared to the "rates billed to defendant corporate employers" referenced by Ms. Woody.

Also attached hereto and marked as Exhibit 7 is an affidavit of Michael Downey. Mr. Downey is one of the foremost experts in the local region concerning legal ethics related to billing practices of lawyers, particularly in the Kansas City and St. Louis areas. (Exhibit 7, Paragraphs 2, 3, and 6). Mr. Downey opines and explains that the hourly rate of Mr. Kistler is

5

reasonable. (Exhibit 7, Paragraphs 7-14). "The prevailing local market rates for attorneys practicing in this area of litigation ranges from approximately $180 per hour (for attorneys with little or no experience) up to more than $500 per hour (for the most experienced employment lawyers)." (Exhibit 7, Paragraph 7).

Moreover, this court has found that an hourly rate greater than the $325 rate requested here to be reasonable. See *Crux Subsurface, Inc. v. Black & Veatch Corp.*, 2011 WL 6180890 (D. Kan. Dec.13, 2011) (finding that a $350 hourly rate in Kansas City, Missouri to be reasonable); *Seamands v. Sears Holding Corp.*, 2011 WL 884391 (D. Kan. March 11, 2011) (holding that, in an employment action, an hourly rate of $400 is reasonable for counsel experienced in class action litigation even though counsel did not have particular expertise in employment-related matters). Similarly, courts have approved settlements where the hourly rate was $325. See *Sanderson v. Unilever Supply Chain, Inc*. Case No. 10 CV- 00775 – FJG (W. D. Mo. Dec. 19, 2011), *See* Order Granting Plaintiffs' Unopposed Motion for Approval of Attorneys' Fees and Costs, December 18, 2012 attached hereto as Exhibit 8, *See* Order Granting Plaintiff's Supplemental Motion for Approval of Attorneys' Fees and Costs, March 8, 2013 attached hereto as Exhibit 9.

Furthermore, Plaintiff's Counsel will continue to devote time to this case in the administration of the settlement. The litigation necessitated extensive legal research and briefing and other extensive legal work concerning Plaintiff's Motion for Conditional Certification of the FLSA collective action and Plaintiff's Motion for Class Certification of the IMWL claim. Moreover, in determining the appropriate risk multiplier, the Court should consider the difficulty of the issues presented in this case along with the risk of loss on Plaintiff's counsel.

To determine the reasonableness of the fee, "courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001). The Seventh Circuit held that the "market rate for legal fees depends in part on (1) the risk of nonpayment a firm agrees to bear, in part (2) the quality of its performance, in part on (3) the amount of work necessary to resolve the litigation, and in part on (4) the stakes of the case." *Id.* at 721. The probability of success at the outset of the litigation is relevant to this inquiry. *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 597 (N. D. Ill. 2011) (citing *Synthroid I, 264 F.3d 721; see also Taubenfeld v. AON Corp.,* 415 F.3d 598, 599 (7th Cir. 2005).

   *1. Risk of Non-Payment*

Due to the fact that the Named Plaintiff was not able to pay attorney fees up front, his contract for legal services with Plaintiff's Counsel provides that the case was taken on a contingency fee basis. Thus, if unsuccessful, Plaintiff's Counsel would not be paid fees or reimbursed their out-of-pocket expenses; such risk demands a market premium. *E.g., In re Oracle Sec. Litig.,* 131 F.R.D. 688, 693 (N.D. Cal. 1990). "A contingency fee may permissibly be greater than what an hourly fee lawyer of similar qualifications would receive for the same representation. A contingent-fee lawyer bears the risk of receiving no pay if the client loses and is entitled to compensation for bearing that risk." *See* Exhibit 7, Paragraph 12 (quoting Restatement (Third) of the Law Governing Lawyers (2000) § 35 comment c).

   *2. Quality of Performance*

While counsel assumed exceptional risk of failing to recover their investment of time and costs in this action due to the substantial legal hurdles inherent in the instant matter, "counsel are particularly skilled in handling FLSA cases." *See* Order Granting Plaintiff's Motion for

Attorney Fees, December 19, 2011, attached hereto as Exhibit 10. Plaintiff's Counsel has obtained substantial relief for the class. Absent such particularized knowledge, skill and willingness to assume risk by Plaintiff's Counsel on behalf of the Plaintiff and the class, it is exceptionally unlikely that the class would have obtained the substantial relief represented by the settlement.

Large scale wage and hour cases are complicated and time-consuming matters. Any attorney undertaking these types of cases must be prepared to make tremendous investments of time, energy, and financial resources in order to appropriately pursue them, as evidenced in this case. As detailed in the Parties' motion to approve this settlement, obtaining this settlement on behalf of the class required enormous effort and particularized expertise and attention to detail regarding various nuances in the "compensable time" issues in this case as applied to the weekly overtime claims of class members. More generally, Plaintiff's Counsel possesses particularized skill, experience, and ability to litigate these types of claims, as detailed below.

Mark Kistler has fourteen years of experience litigating labor, employment and employee benefits matters. After completing a two-year clerkship with the Kansas Court of Appeals in 1997, Mr. Kistler was an associate for two years with Blake & Uhlig, a highly respected law firm in Kansas City, Kansas, focusing on union-side labor law, ERISA, and employment law matters. While at Blake & Uhlig, Mr. Kistler performed substantial work on two FLSA collective actions, one in Iowa and one in Nebraska. From 1999 to 2008, Mr. Kistler was a member of another highly respected Kansas City law firm, Arnold, Newbold, Winter & Jackson, focusing on ERISA litigation and compliance, union-side labor law and various employment law matters, including second-chairing a jury trial in a WARN Act class action in Arkansas. Mr. Kistler was made a shareholder of Arnold, Newbold, Winter & Jackson in 2008. From 2008 to 2009, Mr. Kistler

prosecuted complex ERISA class actions with the highly respected law firm, Schlichter, Bogard & Denton, in St. Louis. Since returning to Kansas City, Mr. Kistler joined Brady & Associates in December of 2010, where Mr. Kistler has focused his practice almost exclusively on prosecuting wage and hour collective and class actions. Mr. Kistler has presented local seminars on wage and hour issues and has earned a superior reputation among his peers.

Sara Gold graduated from the University of Kansas School of Law in May 2012. She was the symposium editor of the Kansas Journal of Law and Public Policy. Her article, *Amendments to the Kansas Workers Compensation Act in Light of Bergstrom v. Spears Manufacturing Company,* was published in the Journal.

Layne Aingell, Kathy Corcoran, and Danielle Shirley satisfy the requirements established by the Kansas Bar Association to perform work as a "legal assistant/paralegal". Attached hereto as Exhibit 11 is a copy of the "Official Standards and Guidelines for the Utilization of Legal Assistants/Paralegals in Kansas" of the Kansas Bar Association (2004). Ms. Aingell has accrued approximately 6 years of law related experience under the supervision of an attorney, therefore she satisfies "Standard III" to perform paralegal work. (*See* Exhibit 11 p. 2). Ms. Corcoran has accrued more than seven years of law-related experience under the supervision of an attorney, including more than one year of in-house training as a paralegal, while at Brady & Associates. Ms. Corcoran therefore has satisfied "Standard III" to perform paralegal work. (*See* Exhibit 11, p. 2) Ms. Shirley has accrued approximately seven years of law-related experience under the supervision of an attorney; she therefore has satisfied "Standard III" to perform paralegal work. (*See* Exhibit 11, p. 2). Mr. Downey, as a foremost expert in the legal ethics of attorney billing rates in the Kansas City and St. Louis areas, attests that an hourly billing rate of $100 per hour is

9

reasonable for paralegals such as Ms. Aingell, Ms. Corcoran and Ms. Shirley. (Exhibit 7, Paragraph 10).

The reputation, ability, and skill of the attorneys at Brady & Associates were indispensible in reaching this settlement for the benefit of Class Members, which supports the reasonableness of the fees sought herein.

   3. *Amount of Work Necessary to Resolve the Litigation*

This Motion is Plaintiff's Counsels' only opportunity to be awarded fees for their work on this case. Brady & Associates, however, will continue to perform work on this case until effectuating settlement payments to Class Members. As an example, there will be inquiries from the class members regarding the terms and consequences of the settlement and the method of computing individual payouts of the settlement. Plaintiff's Counsel will be performing this work without any additional compensation beyond what is sought herein.

   4. *Stakes of the Case*

This case involved difficult issues regarding the amount of daily uncompensated "work" time of Class Members. As discussed in the Parties' Joint Motion to Approve the Settlement, a similar recent "donning and doffing", *Garcia v. Tyson Foods, Inc.* Case No. 2:06-cv-02198-JTM, went to trial and resulted in substantially less relief to individual class members than the settlement at issue here. Also, two other recent "donning and doffing" FLSA class actions resulted in defense verdicts. *See* Exhibits 12 through 15 attached hereto, *Lopez v. Tyson Foods, Inc,* Case. No. 8:06-cv-00459-LES-TDT (D. Neb. May 26, 2011) (Doc. Nos. 372, 375); *Guyton v. Tyson Foods, Inc.,* Case No. 3:07-cv-00088-JAJ-TJS (S.D. Iowa April 25, 2012) (Doc. Nos. 330, 338).

The likelihood of becoming mired in an individualized analysis of the amount of "donning and doffing" time associated with distinctions between class members' safety equipment posed the obvious prospect of protracted evidentiary hurdles. Plaintiff's Counsel accepted this case despite the uncertainly of its ultimate success and the need for specific legal expertise and factual attention to detail concerning Class Members' day to day "compensable time" away from the production line as compared to Farmland Food's policy of paying for ten minutes of daily "dress time" per shift to class members. Thus, the nature of the claims and defenses and the skill required to overcome such undesirable aspects of the case militate in favor of the requested fees.

Therefore, the Court should find the attorneys' fees requested herein, is reasonable as it is well below the percentage used by the Seventh Circuit in common fund cases. Furthermore, the fees requested are the market price for the services performed considering the risk of non-payment, quality of work, stakes of the case, and amount of work necessary to resolve the litigation.

### C. *Enhancement Award*

Defendant has agreed to provide an enhancement award from the Settlement Fund of $2,750 to Named Plaintiff, Scotty Goodell which is in addition to the share he will receive from the Net Settlement Fund. This enhancement payment is in recognition of the additional responsibility and participation required for the role of Named Plaintiff. Moreover, unlike other class members, Mr. Goodell is further deserving of an enhancement award as he agreed to a general release of all claims against Farmland Foods. Courts within the Seventh Circuit have routinely approved enhancement payments such as the one sought herein on behalf of the named plaintiff as the class representative in class action settlements. *E.g., Cook v. Niedert*, 142 F.3d

1004, 1016 (7th Cir. 1998) (granting $25,000 inventive award to class representative); In re Ky. Grilled Chicken Coupon Mktg & Sales Practices Litig., 280 F.R.D. 364, 382-383 (N.D. Ill. 2011).

  **WHEREFORE**, the Plaintiff respectfully requests that this Court enter an Order Granting Approval of Plaintiff's Counsels' fees, costs, and enhancement award as requested.

  Respectfully submitted,

  **BRADY & ASSOCIATES**

  *s/ Mark A. Kistler*
  Mark A. Kistler, KS #17171
  10901 Lowell Avenue, Suite 280
  Overland Park, KS 66210
  Tel: (913) 696-0925
  Fax: (913) 696-0468 *(Facsimile)*
  mkistler@mbradylaw.com
  **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

  A copy of the foregoing was electronically filed on August 23, 2013, with the Clerk of the Court using the CM/ECF system which then sent electronic notification of such filing to all those individuals currently electronically registered with the Court.

  Respectfully submitted,

  *s/ Mark A. Kistler*
  Mark A. Kistler, KS #17171
  Brady & Associates
  10901 Lowell Avenue, Suite 280
  Overland Park, KS  66210
  (913) 696-0925
  (913) 696-0468 *(Facsimile)*
  mkistler@mbradylaw.com
  **ATTORNEY FOR PLAINTIFF**